# AFFIDAVIT

I, Roberto J. Dourado, state:

## *INTRODUCTION AND AGENT BACKGROUND*

1. I am a Special Agent (SA) with the Federal Bureau of Investigation, assigned to the Boston Field Office. As a Special Agent, I investigate criminal violations including bank fraud, in violation of 18 U.S.C. § 1344, and aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1).

2. I submit this affidavit in support of an application for a criminal complaint charging STEVEN WARE with bank fraud, in violation of 18 U.S.C. § 1344, and with aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1), and for a warrant for WARE's arrest.

3. The facts in this affidavit come from my personal knowledge, information provided to me by other law enforcement agents, information I obtained through witness interviews, and my review of records described herein. This affidavit is not intended to set forth all of the information that I have learned during this investigation and includes only the information necessary to establish probable cause for the requested complaint and arrest warrant.

## *PROBABLE CAUSE TO BELIEVE A FEDERAL CRIME WAS COMMITTED*

Background

4. According to New York State Department of Motor Vehicles ("DMV") records, which I have reviewed, WARE lives in an apartment in Yonkers, New York. His New York motorist identification number ends in 7261000. His motorist identification record states that his height is 5'7" and his date of birth is January 17, 1961. Below is the image for WARE that is on file with the New York DMV.



5.	The Credit Union is a financial institution with operations in Massachusetts and New Hampshire.  The deposits of the Credit Union are insured by the National Credit Union Administration ("NCUA") which operates the National Credit Union Share Insurance Fund.

6.	The Company is a real estate fund manager headquartered in Stamford, Connecticut.

7.	The Executive, whom I interviewed, is the Company's co-managing partner.  The executive typically uses his middle name instead of his first name, although he sometimes uses his first initial in addition to his middle name.  The Executive told me that he was not in Massachusetts in December 2023.  He had never heard of the Credit Union and did not open or authorize anyone to open an account for him or the Company there. I have reviewed an image of the Executive from the Company's website.  He does not remotely resemble WARE.  Among other things, he is white and bald.

8.	I have interviewed the Company's general counsel and chief compliance officer, who told me that on or about January 12, 2024, the Company's office manager received a letter and a telephone call from the Credit Union notifying the Company that its account had been frozen due to fraudulent activity. Upon further internal investigation with the Credit Union, the Company determined there was an issue with its tax return and refund.

The Fraud

9. On or about December 15, 2023, WARE entered the Credit Union's branch in Tyngsborough, Massachusetts, and interacted with a Credit Union employee (the "Employee"). WARE purported to be the Executive, and the Employee assisted WARE in opening a business checking and savings account in the name of the Executive and the Company. The Employee later greeted WARE on multiple occasions when WARE returned to the Credit Union to arrange for wires from the account. On or about June 14, 2024, the Employee reviewed an eight-person photo array and identified the New York DMV image of WARE as the person who opened the accounts for the Executive and the Company.

10. When opening the accounts, WARE identified himself using the Executive's middle and last names. WARE also provided a date of birth and a Social Security number, both of which were not the Executive's. WARE provided correct information for the Company.

11. During the account application process, WARE presented a Connecticut driver's license with a number ending in 9862, which is a valid driver's license that belongs to an individual who has the same middle and last name as the Executive. WARE informed the Employee that he had just moved to the area and was looking to expand his real estate business into New England with his purported partner.

12. As part of the application process, WARE provided the Credit Unit with an Internal Revenue Service ("IRS") SS-4 form dated August 2, 2012, which identified the Company and its correct Employer Identification Number. Also included on this form were the address for the Company and the name of the Executive.

13.     WARE also provided the Credit Union, among other documents, a Verizon invoice which listed the Executive's middle and last name, and a purported local address in Nashua, New Hampshire.

14.     WARE returned to the Credit Union on or about December 20, 2023 with a United Stated Treasury check, with a number ending in 6846, in the amount of $810,337.28, which he deposited it into the Company's account. The check was payable to the order of the Company and the Executive. I confirmed with the IRS that the check is genuine and that based on the deposit, the United States Treasury transferred $810,337.28 to the Credit Union.  Once the check was deposited, the Credit Union held the money for five business days.  The check cleared, and WARE was able to access the money.

15.     Credit Union security cameras captured footage of WARE depositing the United States Treasury check on or about December 20, 2023.  Below is an image taken from this footage.



16. I confirmed with the Executive and the Company's chief financial officer that the Executive and the Company did not authorize anyone to deposit the check into an account in the Company's name at the Credit Union.

17. According to the Credit Union's records, the Credit Union issued WARE a debit card associated with the Company's account. Credit Union records, which I have reviewed, show that, from December 28, 2023 to January 12, 2024, this debit card was used in New York, Massachusetts, and New Hampshire, at locations including the Apple Store, Home Depot, CVS, Louis Vuitton, and Cracker Barrel. As a result of this use of the Company account debit card, $19,860.11 was withdrawn from the Company account at the Credit Union. Additionally, WARE withdrew approximately $18,800 in cash at the Credit Union between on or about December 22, 2023 and on or about January 9, 2024.

18. For example, on or about January 10, 2024, four debit card transactions occurred at the Pheasant Lane Mall in Nashua, New Hampshire. I have reviewed closed circuit television recordings of the four transactions, which shows four persons, none of whom is WARE.

19. According to the Credit Union's records, WARE returned to the Credit Union on multiple days, including on or about December 28, 2023 and on or ab out January 5, 2024, to initiate wire transfers to persons and entities including an escrow company.

20. In total, WARE wired $634,319.71 out of the Company account.

21. On or about January 5, 2024, when WARE arranged for a wire to the escrow company, the Credit Union's cameras captured WARE entering the Credit Union and at the teller counter, purporting to be the Executive. Below are two still images from the Credit Union's security video that display WARE's face.





22. Based on the information provided above, there is probable cause to believe that from on or about December 15, 2023 and continuing to at least January 12, 2024, WARE knowingly executed, or attempted to execute, a scheme or artifice to defraud the Credit Union, a

6

financial institution with deposits insured by the NCUA, by opening a fraudulent account using a stolen identity and depositing a fraudulently obtained check into the account, in violation of 18 U.S.C. § 1344.

23. Based on the information above, there is probable cause to believe that on or about December 15, 2023, during and in relation to the crime of bank fraud, WARE knowingly transferred, possessed, and used the means of identification of another person, specifically the Executive's name, without lawful authority, to perpetrate bank fraud, in violation of 18 U.S.C. § 1028A(a)(1).

Sworn to under the pains and penalties of perjury.

/s/ Roberto J. Dourado

Roberto J. Dourado
Special Agent
Federal Bureau of Investigation

Subscribed and sworn before me telephonically under Rule 4.1(a) on September 4, 2024.

HON. M. PAGE KELLEY
United States Magistrate Judge