UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | No. 24-CR-10304 (WGY) |
| STEVEN WARE, | ) ) | |
| Defendant | ) ) ) | |

SENTENCING MEMORANDUM OF THE UNITED STATES

*[T]he defendant's actions represent a serious violation of trust and security that has had far-reaching consequences for both my business and personal life.  The theft of personal information and the filing of fraudulent tax returns is not a victimless crime—it has caused substantial financial harm, operational disruption, and personal distress.*

*The defendant's criminal conduct has required us to divert significant time, energy, and resources away from our legitimate business activities.  The ongoing nature of the IRS resolution process means that we continue to suffer from the defendant's actions even after his conviction.*

Victim 1,
Managing Partner of Company A,
August 11, 2025

Treasury check fraud is rampant in the District of Massachusetts and beyond.  Since 2024, the government has charged at least 12 cases involving stolen or altered U.S. Treasury checks in this District, involving more than $11.3 million in checks.[1]  The thefts are incredibly

---

[1] In addition to this case, *see United States v. Jackson*, No. 24-cr-10213-DJC; *United States v. Allegra*, No. 25-CR-10267-DJC; *United States v. Tenryk*, No. 24-cr-01227-DJC; *United States v. Amarpreet Singh*, No. 25-CR-10322-DJC; *United States v. Gurprit Singh*, No. 25-CR-10325-DJC; *United States v. Domingo Villari*, No. 25-CR-10337-DJC; *United States v. Smith Matthews*, No. 25-CR-10372; *United States v. Opara*, No. 25-CR-10377-DJC; *United States v. Banks*, No. 25-CR-10395-DJC; *United States v. El-Ghoul*, No. 25-CR-40028-DJC; *United States v. Lana Ruel*, No. 25-mj-04593-DHH.  Two months ago, the Department of Justice charged seven other defendants with similar crimes involving 1,300 stolen U.S. Treasury checks worth more than $3.1 million in the District of Connecticut.  *See* https://www.justice.gov/usao-ct/pr/seven-charged-scheme-involving-cashing-more-3-million-stolen-us-treasury-checks-hartford (visited Jan. 8, 2026).  In March 2025, the U.S. Attorney's Office in Manhattan charged

costly and disruptive for victims and victim businesses. But these frauds only work because of defendants like Steven Ware, who walked into a bank branch, impersonated an individual victim, and deposited a stolen check worth $810,337.28. At the same time, the defendant received only a small share of that amount, and his history and characteristics reflect a lifetime of substance abuse making him more vulnerable to the allure of quick money. Accordingly, the government respectfully requests that the Court accept the parties' agreed-upon, below-Guideline recommendation of 40 months, consisting of 16 months on Count 1 and concurrent statutorily required consecutive sentences of 24 months on Counts 2 and 3, with credit for time served in federal custody. The Court should also order 36 months of supervised release, a mandatory special assessment of $300, and that Ware pay restitution to Company A of $322,436.28. The government does not seek a fine, as the defendant does not appear to have the ability to pay one.

*The Offense*

Company A is a real estate investment fund in Connecticut. Its managing partner is Victim 1. In the fall of 2023, Company A filed an IRS Form 8804, which reported partnership income for the tax year 2022. Company A's return generated a refund of $810,337.28. The Internal Revenue Service issued a U.S. Treasury Check in that amount payable to Company A and Victim 1. (¶ 11).[2]

In December 2023, the defendant entered a Jeanne D'Arc Credit Union ("JDCU") branch in Tyngsborough, Massachusetts and impersonated Victim 1. He opened accounts in Company

---

six more defendants with similar crimes. *See* https://www.irs.gov/compliance/criminal-investigation/six-defendants-charged-with-attempting-to-steal-approximately-80-million-in-government-check-fraud-scheme (visited Jan. 8, 2026).

[2] All references to the Probation Office's Pre-sentence Investigation Report are denoted by the ¶ symbol.

A's name, and in doing so presented the date of birth, Social Security Number, and a driver's license for an individual who had the same name as Victim 1, but was not Victim 1 ("Victim 2"). (¶ 12).

The next day, the defendant went back to the JDCU branch and deposited the $810,337.28 U.S. Treasury check that the IRS had issued to Company A and Victim 1. (The investigation has not determined where the defendant obtained the check). The defendant endorsed the check using the name common to Victims 1 and 2, and the check cleared. (¶ 13). In the days that followed, the defendant returned to JDCU several times, each time impersonating Victim 1, signing his name, and arranging for wire transfers to persons and entities outside Massachusetts. In connection with one of the wires, the defendant provided JDCU with a fake investment contract purporting to show that Victim 1 had invested $85,000 in a limited liability company. (¶ 14). The defendant also used the ATM card on the JDCU account to make small purchases at the Home Depot, the Apple Store, fast food restaurants, and pharmacies. (¶ 15). A grand jury in this District indicted the defendant for this conduct, and he was arrested federally on September 10, 2024 in New York City. The defendant has now pled guilty to bank fraud, in violation of 18 U.S.C. § 1344 (Count 1), and aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1) (Counts 2 and 3).

*Convicted State Conduct*

December 2023 was not the first time that the defendant had committed bank fraud. In November 2023, in Bradford, Pennsylvania, the defendant and a co-conspirator deposited a different stolen U.S. Treasury Check (for $130,422.60) ("the Bradford Check Fraud"). Over a series of days, the men withdrew $104,080.50. To accomplish the Bradford Check Fraud, the defendant pretended to be the Treasury check's actual payee. The Commonwealth of

Pennsylvania charged the Bradford Check Fraud and took the defendant into custody in September 2024, after he was released on conditions following his arrest in this federal matter. Pennsylvania convicted the defendant, and he served approximately 9 months in state custody between September 2024 and June 2025. (¶¶ 17, 53).

*Relevant, Uncharged Conduct*

After the bank fraud charged in the Indictment, the defendant traveled to Rhode Island, where he impersonated another accountholder at a Bank of America branch in East Greenwich. At that branch, he conducted two transactions to take $44,500 out of a victim's account. (¶ 18).

*Victim Impact*

Victim 1, who is aware of his right to appear and be heard at sentencing in this matter, has provided a Victim Impact Statement to the Court dated August 11, 2025. (The government cites from the Statement above). Victim 1 describes substantial financial losses to Company A, including $322,436.28 that it has not received back from the IRS, and professional fees in the thousands of dollars involved in recouping that amount. Victim 1 also reports disruption to Company A's business, because firm personnel had to spend time investigating the fraud, communicating with law enforcement personnel, and working with the IRS to resolve the dispute over the stolen money. Victim 1 also describes the understandable personal disruptions stemming from the theft of his personally identifiable information, concern about his vulnerability to identity theft in the future, and the frustration with the two-year process of bringing the defendant's criminal case to a close. Victim 1 reports that the defendant's crime has undermined his confidence in "the security of personal and business information[; g]overnment systems designed to prevent tax fraud[; and t]he efficiency of remediation processes for identity theft victims." (Victim Impact Statement, Victim 1).

*The Sentencing Guidelines*

The parties and the Probation Office agree the defendant has a total offense level of 18 and a Criminal History Category III, with a resulting advisory Guidelines Sentencing Range of 33 to 41 months, plus 24 months each as to Counts 2 and 3, for a total range of 57 to 65 months. (¶¶ 55, 103).

*The Recommended Sentence*

The parties have also agreed, pursuant to Fed. R. Crim. P. 11(c)(1)(C), that the Court should sentence the defendant to 40 months in prison, with credit for time served in federal custody. (Docket No. 41). If the Court imposes this sentence, the defendant will have been in custody for approximately 49 months since his federal arrest and detention on the Bradford Check Fraud. As set forth below, each of the factors set forth at 18 U.S.C. § 3553(a) counsels in favor of a significant sentence, but one that is slightly below 57 months, the otherwise applicable Guidelines Sentencing Range.

    *1.    Seriousness of the Offense*

While it might be tempting to conclude that the theft of a Treasury check itself is the serious offense (and its architect the most serious offender), these schemes do not work without individuals like the defendant. By impersonating the individual victims and deceiving JDCU about his identity, the defendant helped the scheme's architects turn the Treasury check—which was easily identifiable as government property—into cash and bank deposits in other states that had no apparent nexus to fraud.

Victim 1's statement at the beginning of the government's memorandum underscores the kind of disruption and damage the defendant caused. There is also a human dimension to these

crimes, as anyone who has experienced the uncertainty of having their personal data stolen can attest.

What is more, the GSR is no higher because of defendant's uncharged Rhode Island fraud. His offense level is the same with and without those losses. This omission would ordinarily be grounds for the Court to sentence the defendant closer to or within the GSR, but a 40-month sentence is already significant, and it already reflects the seriousness of the defendant's offense, even if that sentence varies below the otherwise applicable Guideline.

In evaluating the seriousness of the offense, the Court should also consider that the defendant wired nearly all of the proceeds from the stolen check to others. His cut of fraudulent proceeds was relatively small. The defendant's co-conspirators always intended for him to take the fall, and accordingly sent him into the branches to ensure that he was on the videos and pictured in fake driver's licenses. This is one of the main reasons the government has agreed to recommend a below-Guidelines sentence to the Court.

  2.  *General Deterrence*

The defendant's crime is also particularly suited to a generally deterrent sentence. Although depositing the stolen check was not particularly profitable for the defendant, he committed a crime with an incredibly low barrier to entry. He did not need access to Treasury checks; specialized knowledge about the tax system; or equipment to alter the stolen check. He simply had to walk into a bank and pretend to be someone he was not. Given the number of Treasury check thefts the government has been called upon to prosecute in just the last year, the requested sentence of imprisonment for this defendant will put the public on notice of a fairly common-sense proposition: if you impersonate someone to deposit and withdraw funds from a bank, you will go to prison.

       3.      *Individual Deterrence*

It can be fairly said that some criminal history scores overstate a defendant's culpability, his past involvement with the criminal justice system, and the likelihood of recidivism. The defendant's is not one of them. As evidenced by the fact that he had already offended in Pennsylvania when he walked into the JDCU branch and impersonated Victim 1, and that he went on to commit more bank fraud in Rhode Island, the defendant also presents a substantial risk to re-offend. In this respect, it is important that the Court's sentence protect the public from the defendant. He has a lengthy criminal history, with some 15 separate convictions dating back to 1979 and 1982, many of them hinting strongly at addictions to controlled substances. The recommended sentence will protect the public from the defendant accepting money to commit crimes during that term. When he is released, the defendant will likely face many of the same pressures to reoffend, but the Court's sentence will hopefully cause him to think carefully before doing so.

       4.      *Similarly Situated Defendants*

A 40-month federal sentence that immediately follows a 9-month sentence for the Bradford Check Fraud would also fairly reflect how courts have punished fraudsters like the defendant. According to the U.S. Sentencing Commission's JSIN database, during the last five fiscal years (FY2020-2024), there were 24 defendants sentenced whose primary guideline was USSG § 2B1.1 and who were convicted of at least one count of 18 U.S.C. § 1028A, with a Final Offense Level of 18 and a Criminal History Category of III. These 24 defendants had an average sentence of 53 months and a median sentence of 57 months. https://jsin.ussc.gov/analytics/saw.dll?Dashboard (visited Jan. 9, 2025). That 53-month sentence is just above the total consecutive time (49 months) that the defendant will serve for his offense

7

of conviction and the Bradford Check Fraud he committed a month earlier, which would have been relevant conduct in this case had Pennsylvania not charged the defendant. As noted below, the defendant's substance abuse struggles counsel in favor of a modest variance from similarly situated defendants who were not addicted to heroin.

        5.     *History and Characteristics of the Defendant*

The government is comfortable recommending a below-Guidelines sentence in part based on defendant's history of substance abuse. The PSR indicates he was using heroin shortly before his most recent arrest. (¶ 88). It also describes historic use of cocaine, crack cocaine, and marijuana. (¶¶ 86-87). This history supports a modest variance, as it has likely made the defendant vulnerable to the appeal of financial crimes to support an addiction. With such a variance, the government respectfully submits that the agreed-upon 40-month sentence adequately accounts for the defendant's circumstances.

CONCLUSION

For all of these reasons, the United States respectfully requests that the Court sentence Steven Ware to 40 months' imprisonment, 3 years supervised release, and a $300 special assessment. The Court should also order the defendant to pay restitution to Company A totaling $322,436.28. The government does not seek the imposition of a fine.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

By: /s/*Seth B. Kosto*
Seth B. Kosto
Assistant United States Attorney
One Courthouse Way, Suite 9200
Boston, Massachusetts 02210

January 9, 2026

CERTIFICATE OF SERVICE

I hereby certify that on January 9, 2026, I provided a copy of the foregoing to the attorneys for the defendant through the Court's Electronic Case Filing system.

/s/*Seth B. Kosto*
Seth B. Kosto
Assistant United States Attorney

January 9, 2026