UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Criminal No.: 24-cr-10304-WGY |
| v. ) | |
| ) | |
| ) | |
| ) | |
| STEVEN WARE ) | |

SENTENCING MEMORANDUM ON BEHALF OF DEFENDANT STEVEN WARE

The defendant, Steven Ware, submits this memorandum in support of his request for a sentence of 40 months imprisonment, with three years of supervised release thereafter. Mr. Ware further moves this Court to order his sentence be served at the state facility in Connecticut where he was serving his sentence prior to being transferred to this jurisdiction, and order it concurrent with that same sentence. Mr. Ware has pled guilty and accepts responsibility for his actions (ECF 42).

I.  Procedural Posture

Steven Ware was indicted on October 1, 2024, for one count of Bank Fraud under 18 U.S.C. §1344 and two counts of Aggravated Identity Theft under 18 U.S.C. §1028A(a)(i). (ECF 8). He was arraigned on October 31, 2024. He appeared virtually on July 24, 2025, for a hearing pursuant to Fed. R. Crim. P. 11, and pled guilty to all indictments. (ECF 42). The parties have entered a plea agreement with the Court pursuant to Fed. R. Crim. P. 11(c)(1)(C). (ECF 41). The terms set forth in the plea agreement are 16 months imprisonment on Count One and 24 months imprisonment on each of Counts Two and Three. The 24 months sentences would be concurrent to each other, and consecutive to the sentence imposed on Count One.

II.  Facts

Steven Ware opened a bank account at Jeanne D'Arc Credit Union in Tyngsborough, Massachusetts, in December, 2023, under the name of the managing partner for Proprium Capital. Mr. Ware presented various documents supporting the identity claim. Mr. Ware later deposited a Treasury check made out to Proprium in the amount of $810,337.28. Thereafter, Mr. Ware initiated several wire transfers to multiple people out of state, which eventually totaled an actual loss amount of $322,411.98, after some wire transfers were reversed. Mr. Ware was alleged to have personally taken a small amount of the money at issue.

Mr. Ware was also convicted out of Pennsylvania state court of similar activity, the loss amount in that case is referenced in the Presentence Report as $104,080.50.

III.    The Sentence Guidelines Calculation

According to his PSR, Mr. Holder's sentence guidelines are calculated as follows: a base offense level of 7, because the offense is enumerated in USSG §2B1.1, and carries a maximum term of imprisonment of 20 years or more; an additional 14-level increase due to an actual and intended loss between $550,000 and $1,500,000; and a three level decrease for acceptance of responsibility. This results in a final offense level of 18, which gives a guidelines range between 33 to 41 months in prison. He is also subject to a 24 months mandatory prison sentence, which must be served consecutively to any other sentence. Both parties agree with this sentence guidelines calculation.

IV.    The Proposed Sentence is Sufficient and Appropriate Under the Factors Identified in 18 U.S.C. § 3553(a)

Pursuant to 18 U.S.C. § 3553(a)(1) and (2), this Court, in determining what sentence to impose, shall consider:

i) The nature and circumstances of the offense and the history and characteristics of the defendant;
ii) The need for the sentence imposed:
   (1) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (2) To afford adequate deterrence to criminal conduct;
    (3) To protect the public from further crimes of the defendant; and
    (4) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

A. <u>The Nature and Circumstances of the Offense and History and Characteristics of the Defendant Support His Recommendation</u>

    a. *Mr. Ware's personal background.*

Steven Ware is sixty-four years old, and was born in New York, living his whole life in the United States. The defendant was primarily raised by a single mother who suffered from addiction and from whom he was separated periodically due to her issues with drugs and alcohol. Due to her addiction issues, Mr. Ware was emotionally and physically abused by his mother while he was growing up. He was hit repeatedly while his mother was in a drunken fit of rage, and he was constantly demeaned and put down. His mother eventually died due to her addiction to alcohol.

Not surprisingly, Mr. Ware himself eventually turned to drugs and alcohol. In addition to his difficult upbringing, Mr. Ware faced a traumatic incident in his youth when he discovered his brother's murdered body. His brother used and sold drugs, and this incident impacted Mr. Ware deeply due to the strong connection he and his brother shared. From that young age, Mr. Ware numbed himself with drugs and alcohol.

Mr. Ware's issues with drugs do not end there. His youngest son also ended up addicted and eventually passed away due to a drug overdose. It is not an exaggeration to state that Mr. Ware's difficulties in life have all been driven by drugs in one way or another. Until his arrest in conjunction with this case, Mr. Ware was using heroin daily for many years.

    b. *The facts of this case support leniency for Mr. Holder.*

Mr. Ware's issues with drugs do not stop at health afflictions. They have also been the driving force for his criminal behavior, as this Court can easily see from his record. Most of the defendant's crimes have been directly related to drug use, and the non-drug crime arrests and

convictions have been indirectly drug driven. This case is no different. Mr. Ware was induced to this crime by his dealer in New York, who promised him a steady supply of drugs if he followed the instructions of a third party to open the bank accounts and make specific deposits and withdrawals. Mr. Ware was not the ringleader in this scheme, and he was not the financial beneficiary. Rather, Mr. Ware was solicited using his addiction and engaged in this crime to maintain a steady supply of drugs to use.

  B. A Sentence of 60 Months Imprisonment Will Satisfy the Purposes of Punishment Under 18 U.S.C §3553

The purposes of punishment under §3553 will be served by imposing a sentence of 40 total months in prison, concurrent with his state sentence out of Pennsylvania. The history of the defendant and the nature of this offense both support the sentence requested herein. A sentence of forty months will reflect the seriousness of the crime, which undoubtedly harmed both the individual whose identity Mr. Ware stole, and the individuals associated with the company whose money was stolen. Mr. Ware was not the leader of this scheme and would not have been able to come up with or carry out such a complicated criminal enterprise on his own. The sentence is sufficient to deter someone similarly situated to Mr. Ware, who did not benefit financially in a significant way from this crime save for his ability to maintain his drug habit without having to pay for it.

Mr. Ware would most benefit from and society would be best protected from his further crimes if he was able to get and stay sober. In custody programming and programs such as CARE once on supervised release would help accomplish this goal. There is no need for an excess of 40 months incarceration to allow him to access the programming available to help him maintain the sobriety that incarceration has forced.

V.    Applicable Sentencing Guidelines and the Defendant's Sentence Recommendation

Following *United States v. Booker*, 543 U.S. 220 (2005), the sentencing guidelines are "merely advisory, which means that this Court has considerable leeway to impose a sentence that falls outside the range suggested." *See United States v. Robinson*, 433 F.3d 31, 35 (1st Cir. 2005). Courts to not need "extraordinary" circumstances to justify a sentence, and they should not use a "mathematical formula" as the standard for determining the strength of the justification required for a specific sentence. *Gall v. United States*, 552 U.S. 38, 48 (2007). The guidelines "are still generalizations that can point to outcomes that may appear unreasonable to sentencing judges," and this Court should not presume that they are reasonable. *Booker* allows courts "to impose non-guideline sentences that override guidelines, subject only to the ultimate requirement of reasonableness." *See United States v. Jimenez-Beltre*, 400 Mass. F.3d 514, 518 (1st Cir. 2006). Imposition of the sentence requested herein will result in a sentence that is sufficient, but not greater than necessary, to effectuate the purposes of sentencing. *See United States v. Kimbrough*, 128 S.Ct. 558 (2007); *United States v. Booker*, 125 S.Ct. 738 (2005); *United States v. Martin*, 520 F.3d 87 (1st Cir. 2008); *United States v. Rodriguez*, 527 F.3d 221 (1st Cir. 2008).

VI.  Conclusion

Mr. Ware has accepted responsibility for his actions in this case . The sentence proposed accomplishes the goals of sentencing while minimizing the detrimental effect of additional incarceration. The defendant respectfully requests the Court adopt the proposed sentence.

**CERTIFICATE OF SERVICE**

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on January 12, 2026.


/s/ Erin Opperman